IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEANNIE MICHELLE KELLAR,**        )<br>                                                              )<br>              **Plaintiff,**                       )<br>v.                                                           )     Case No. CIV-20-389-JFH-SPS<br>                                                              )<br>**KILOLO KIJAKAZI,**                         )<br>**Acting Commissioner of the Social**    )<br>**Security Administration,**[1]             )<br>                                                              )<br>              **Defendant.**                      ) | |

## REPORT AND RECOMMENDATION

The claimant Jeannie Michelle Kellar requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 39). She completed high school while attending special education classes and has worked as a certified nurse aid (Tr. 26, 203). The claimant alleges that she has been unable to work since September 20, 2018, due to right shoulder blade problems, neuropathy in the legs and feet, right leg edema, borderline diabetes, anxiety, a uterine cyst needing a hysterectomy, and because she dislikes being around people (Tr. 202).

## Procedural History

On September 20, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Luke Liter, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 8, 2020 (Tr. 15-28). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR § 416.967(c), *i. e.*, she can lift/carry/push/pull fifty pounds occasionally

and twenty-five pounds frequently, sit for six hours in an eight-hour workday, and stand/walk for six hours in an eight-hour workday. Additionally, he found she can understand, remember, and carry out simple tasks and tolerate superficial (brief and cursory) contact with coworkers and supervisors, but that public contact should not be a part of her job duties (Tr. 20). The ALJ concluded that although the claimant is unable to return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, warehouse worker, laundry worker 1, and machine packager (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the medical opinions of Ms. Kellar's treating psychiatrist, Dr. Jennings. The undersigned Magistrate Judge agrees, and the decision of the ALJ should be reversed.

The ALJ determined that the claimant's generalized anxiety disorder, morbid obesity, deep vein thrombosis, and asthma were severe impairments, but that any other mentioned impairment was nonsevere (Tr. 17). The medical evidence relevant to the claimant's mental impairment reflects that even prior to her alleged onset date, she reported difficulty being around large groups of people, having only a small number of people she was comfortable with, and arranging outings to accommodate her anxiety (Tr. 272). In December 2018, she reported not doing very well due to family stressors (Tr. 278).

The claimant received treatment at Evolve Professional Counseling with Dr. Deborah S. Jennings on a recurring basis. On August 22, 2018, Dr. Jennings completed a mental RFC assessment of the claimant in which she noted that, out of twenty areas, the

claimant had moderate limitations in five areas, marked limitations in seven, and extreme limitations in seven. Her extreme limitations included the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, as well as the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 346-347). Dr. Jennings stated, "Aside from severe psychologic illness, she has multiple physical problems/conditions that are chronic and exacerbate her psychological conditions. Due to pain, illness, and psychological disorder she is unable to work even one day per month. I consider her 100% disabled." (Tr. 347).

On December 17, 2018, Dr. Jennings completed another assessment, a Mental Status Form, in which she diagnosed the claimant with generalized anxiety disorder and depressive disorder not specified (Tr. 282). She indicated that the claimant's short-term memory had decreased, that she was sad and anxious but not psychotic, and that she was very sensitive to perceived criticism from others (Tr. 282). Additionally, she stated that the claimant needed to avoid stress of all kinds because her ability to think deteriorated with stress and requests from others, as did her ability to reason and respond (Tr. 282). She noted the claimant was capable of regular activities of daily living and helping her mother with light housekeeping. She stated that the claimant would need ongoing supportive therapy and medication managements, that she should be limited to simple work, and that she would not respond well to work pressure, supervision, or co-workers (Tr. 282).

On April 15, 2019, the claimant presented to Dr. Wojciech Dulowski for a disability evaluation (Tr. 325-326). Although it appears to have largely been a physical examination, Dr. Dulowski assessed her with, *inter alia*, extreme general anxiety disorder with panic attack, personality disorder, and insomnia (Tr. 326).

By February 2019, the claimant reported rarely leaving her house due to anxiety and that she suffered from insomnia (Tr. 316-317). In March 2019, the claimant reported anxiety, stress, and lack of sleep severe enough to cause diarrhea (Tr. 350). Stressors included the closing of a grocery store where she used to shop because it would be empty when she went (Tr. 350). The treatment notes indicated that the claimant had very poor problem solving (Tr. 350). On June 10, 2019, treatment notes reflect that the claimant had transferred from Dr. Jennings's care to a new treatment provider, who advised the claimant that she needed to get established with a psychiatrist (Tr. 335). In July 2019, treatment notes reflect the claimant continued to seek medication and treatment for her anxiety (Tr. 402).

State agency physicians, both initially and on reconsideration, found the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and can adapt to a routine work situation, but that she cannot relate to the general public (Tr. 70, 88).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record (Tr. 20-26). As to her mental impairments, the ALJ found that the claimant's mental health treatment at the time of the September 20, 2018 onset date was "nonexistent," but then summarized treatment

notes from that time regarding her anxiety (Tr. 23-24). He then summarized additional treatment notes and concluded that because there were no mental health treatment notes in the record in the six months prior to the administrative hearing, he found she could perform the above-listed range of work (Tr. 24-25). As to Dr. Jennings's August 2018 opinion, he found that the limitations she assessed were more extreme than supported by the record and were therefore not persuasive (Tr. 25). He further found that Dr. Jennings was only qualified to make determinations as to the claimant's mental health, and essentially wholly discounted her opinion because she noted that the claimant's mental impairments were affected by her physical impairments (Tr. 25). He further asserted that the statements that the claimant was disabled and unable to work invaded the province of the ALJ (Tr. 25). The ALJ does not appear to have acknowledged Dr. Jennings's December 2018 assessment. The ALJ ultimately determined that the claimant was not disabled (Tr. 27).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In this case, the ALJ only properly summarized one of Dr. Jennings's opinions, and further failed to properly assess either of her opinions under the aforementioned standards. This was error because the regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). As to this factor, the ALJ simply stated without explanation that Dr. Jennings's August 2018 assessment was not supported by the evidence of records, including her treatment notes, but failed to specify what evidence contradicted her opinion. Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical

-8-

sources" in the record. 20 C.F.R. § 416.920c(c)(2). Here, the ALJ did not even address this factor, which was reversible error. Indeed, the ALJ failed to acknowledge the *consistent* evidence that the claimant struggled with being in public and further was extremely sensitive to criticism or authority. Both state reviewing physicians noted an incident where the claimant was insistent that the Social Security Administration accommodate her needs and reschedule an appointment to suit her sleep disorder but then asserted she should not even have to attend it (Tr. 64, 82). This corroborates Dr. Jennings's assertion that the claimant would not tolerate work pressure, supervision, *or* coworkers (Tr. 282) – an opinion the ALJ entirely disregarded. It was error for the ALJ to ignore this probative evidence. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted]. Furthermore, the ALJ is required to evaluate the claimant's impairments *in combination* when reaching an RFC determination. The ALJ's rejection of Dr. Jennings's contention that the claimant's physical impairments exacerbated her mental impairments is disingenuous as best. An explanation of the persuasiveness of Dr.

Jennings's opinion that includes a discussion of how she supported her opinion and how her opinion compares with the other evidence of record is therefore entirely absent from the ALJ's decision and constitutes reversible error.

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**